UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
TODD WALERSTEIN,

                              Plaintiff,                    04 CV 1096 (SJ) (SMG)

        - against-                                         **MEMORANDUM
                                                           AND ORDER**

RADIOSHACK CORPORATION,

                              Defendant.
------------------------------------------------------X
A P P E A R A N C E S :

FRANK & ASSOCIATES, P.C.
500 Bi-County Boulevard, 112N
Farmingdale, NY 11735
By:     Peter A. Romero, Esq.
Attorney for Plaintiff

JACKSON LEWIS LLP
One North Broadway
White Plains, NY 10601
By:     Margaret Armstrong Weiner, Esq.
        Michelle McKee Cubbon, Esq.
Attorneys for Defendant


JOHNSON, Senior District Judge:

        Plaintiff Todd Walerstein ("Plaintiff") brought this action against Defendant

RadioShack ("Defendant") alleging disability discrimination in violation of 42

U.S.C. § 2000 <u>et seq.</u> ("Title VII"); the New York State Human Rights Law, New

York Executive Law § 290 <u>et seq.</u> ("Human Rights Law"); the New York City

1

Administrative Code, N.Y.C. Admin. Code § 8-101 et seq. ("Administrative Code"); and 42 U.S.C. § 12101 et seq. ("Americans With Disabilities Act," or "ADA"), and claiming wrongful discharge. Plaintiff seeks backpay and punitive damages. Before this Court is Defendant's Motion for Summary Judgment ("Motion"). For the reasons stated herein, Defendant's Motion is DENIED.

## BACKGROUND[1]

Plaintiff suffers from Retinitis Pigmentosa ("RP"), a degenerative disease which affects the retina, and Usher's Syndrome, a disease that affects one's ability to hear (Pl. Aff. at ¶¶ 3, 5). As a result of these ailments, Plaintiff has severe loss of sight and hearing. Plaintiff has been unable to see out of his left eye since his early 20's, and has a narrowing field of vision out of his right eye (Pl. Aff. at ¶ 4).

Plaintiff began working at RadioShack in 1983 and, with the exception of two brief periods, worked there until his termination in December 2002 (Pl. Aff. at ¶ 6). Librada Garcia, Plaintiff's manager, was aware of Plaintiff's disabilities (Garcia Dep. at 47-48), as was Frank Rodriguez, the District Manager of the sector (Garcia Dep. at 25:18-25). Plaintiff worked as a part-time sales associate, and his duties were as varied as customer assistance, product assembly, stocking, and cleaning (Pl. Aff. at ¶ 7).

---

[1] Unless otherwise noted, all facts are either undisputed or taken in the light most favorable to Plaintiff.

Plaintiff's disability limited his ability to perform vital work tasks somewhat, but, with some assistance, he was able to perform all the tasks required of a part-time sales associate (Pl. Aff. at ¶ 8; Pl. Dep. 121, 141, 156, 211-212, 215, 227; Romero Dec. Ex. C). Specifically, Plaintiff's co-workers had to keep the store organized in largely the same way because "if we used to place anything in a different location, it would be harder for him to move around the store" (Garcia Dep. at 24:20-22).

Plaintiff's disability also hindered his ability to record his own sales. When Plaintiff began working for RadioShack, sales were recorded manually on paper sales tickets (Pl. Dep. at 219). In or around 1988, RadioShack changed to a system which recorded sales on a computer terminal (Rodriguez Dep. at 64:15-20). Plaintiff had difficulty with the new system because his eyes struggled with the contrast of the computer screen (Pl. Dep. at 201-3, 395-6) and he was unable to adapt to the non-standard keyboard (Pl. Dep. at 134-5, 201-3, 395-6). Plaintiff wanted to continue recording his sales manually on paper, and requested that he be allowed to do so, but his request was denied (Pl. Dep. at 397:23-25, 399: 19-21). Plaintiff's supervisors, however, allowed him to have other sales associates record his sales in the computer system (Pl. Dep. at 196, 393, 399:4-9).

Despite Plaintiff's struggles, he was a model employee. According to Garcia, Plaintiff was knowledgeable about the merchandise (Garcia Dep. at 27),

had a good rapport with customers (id.), had good merchandising skills (id.), was a "big help" (id. at 90), and was "pretty much on time" (id. at 82). Had it been Garcia's decision, she would not have fired Plaintiff (Id. at 120:15). However, the authority to hire and fire employees belonged to Rodriguez and not Garcia (Id. at 97:17).

Even though Garcia worked more extensively with Plaintiff[2] and did not have any reservations about Plaintiff's continued employment at RadioShack, Rodriguez was less certain. One month before Rodriguez decided to terminate Plaintiff (Garcia Dep. at 75:12-13; Rodriguez Dep. at 23:4-6), Rodriguez asked Garcia whether she believed that Plaintiff could perform his job given his disabilities (Garcia Dep. at 75:7-9). Rodriguez expressed doubts as to whether Plaintiff's disability "was causing him not to notice what was going on around him" such as "being able to see a customer and go help that particular customer and stuff like that" (Garcia Dep. at 75:16-19, 22-24).

Rodriguez's purported reason for terminating Plaintiff's employment was Plaintiff's tardiness and his poor sales records (Rodriguez Dep. at 37:2-5). Although Rodriguez claimed that Plaintiff was habitually late, that was not Garcia's recollection (Garcia Dep. at 82:5-6). And although Rodriguez claimed

---

[2] Garcia stated that Rodriguez only came to the Maiden Lane store one or twice a month (Garcia Dep. at 54:13-14). In contrast, Garcia worked with Plaintiff every week and met him frequently (Garcia Dep. at 13:5-7).

that Plaintiff's sales record was the worst in the store, individual employee's goals were determined by whether they were full-time or part-time employees, and Plaintiff was the only part-time employee in the store (Garcia Dep. at 51:22-5). Further, because other employees "rang [Plaintiff's sales] up under their name," Plaintiff was actually responsible for more sales than his sales record reflected (Garcia Dep. at 57:24-58:9). According to Garcia, Rodriguez was aware of this practice (Garcia Dep. at 58:10-18).

Rodriguez also stated that Plaintiff was let go because of a need to reduce employee hours at the store on Maiden Lane in Manhattan ("the Maiden Lane store") (Rodriguez Dep. at 24:21-3). However, in the six months after Plaintiff was terminated, Rodriguez added several non-disabled employees to the Maiden Lane store's staff either through new hiring or transfers from other stores (Romero Decl. Exs. N, O, P, Q, R, and S).

**STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court should view the evidence and any inferences that may be drawn in the most favorable light to the nonmovant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). If

there is enough evidence such that a jury could return a verdict for the nonmoving party, then there is a genuine dispute as to a material fact. Id.

A party seeking summary judgment bears the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must identify the portions of the pleadings and discovery that demonstrate the absence of a genuine dispute of material fact. Id. When the movant's opponent will bear the burden of proof at trial, as is the case here, the movant can prevail merely by demonstrating a lack of evidence to support the opponent's claim. Id. at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## DISCUSSION[3]

### A.     Evidentiary Framework

An ADA claim must be analyzed under the three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir.2002) (applying McDonnell Douglas standard to ADA claim). Under McDonnell Douglas, a plaintiff must first establish a *prima facie* case of

---

[3] The parties agree that the exact same legal standard is to be applied to Plaintiff's ADA and state claims. Therefore, the Court's analysis and findings as to the ADA claim are also applicable to the state claims.

discrimination.  See McDonnell Douglas, 411 U.S. at 802.  The *prima facie*

elements of an ADA claim are: (1) the plaintiff's employer is subject to the ADA;

(2) the plaintiff was disabled within the meaning of the ADA; (3) the plaintiff was

otherwise qualified to perform the essential functions of her job, with or without

reasonable accommodation; and (4) the plaintiff suffered an adverse employment

action because of her disability.  See Jacques v. DiMarzio, Inc., 386 F.3d 192, 198

(2d Cir.2004) (citing Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d

60, 63 (2d Cir.2003)).

Once the plaintiff has established a *prima facie* case, the burden shifts to the

defendant, who must state a legitimate, non-retaliatory reason justifying the

allegedly improper employment action.  See McDonnell Douglas, 411 U.S. at

802–03.  If the defendant meets this burden, the third step is that the plaintiff must

produce evidence that would permit a reasonable jury to find that the proffered

reason is merely a pretext for discrimination.  Id. at 807.

**B.     Plaintiff's *Prima Facie* Case**

There is no dispute in this case as to whether RadioShack is subject to the

ADA or whether Plaintiff is disabled under the meaning of that statute.  Rather,

Defendant argues that Plaintiff has failed to establish a *prima facie* case of

discrimination because he has not demonstrated that he is a qualified individual for

purposes of the ADA, as required for the third prong, and because he has not

7

established any nexus between his disability and the adverse employment action, as required by the fourth prong.

### 1.    Plaintiff is a "Qualified Individual" Under the ADA

In order to satisfy this element of his *prima facie* case, Plaintiff must demonstrate that he was able to perform the functions of his employment with or without reasonable accommodation.  See U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002).  Defendant does not contend that Plaintiff was incapable of performing the duties of a part-time sales associate, nor could it based on the record.  According to Garcia, Plaintiff "actually knew a lot more than any other sales associate, including myself."  Garcia Dep. at 23:5-7.

Rather, Defendant contends that there is no genuine factual dispute on this question because Plaintiff made an unqualified statement to the Social Security Administration ("SSA") that he was unable to work since 2002 because of his visual and hearing impairments.  Defendant asserts that the statement to the SSA precludes Plaintiff from subsequently claiming that he could perform the essential functions of his job with reasonable accommodation.

Statements made for the purpose of securing disability benefits when a claimant is too disabled to work can, but do not necessarily, bar the disabled individual from claiming in an ADA action that he can perform the essential functions of the job at issue.  See Parker v. Columbia Pictures Indus., 204 F.3d 326,

333 (2d Cir.2000) (citing <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 801 (1999). Rather, when a plaintiff has made an earlier claim for Social Security Disability Insurance ("SSDI"), the Court must undertake a fact-specific analysis to determine whether the claims made in the SSDI application directly contradict the allegations made in the ADA context. <u>See</u> <u>id.</u>

Where the SSDI claim and the ADA suit "involve directly conflicting statements about purely factual matters," summary judgment is appropriate. <u>Cleveland</u>, 526 U.S. at 801 (contrasting plaintiffs' statements with contradictory assertions such as "The light was red/green," or "I can/cannot raise my arm above my head"); <u>see also</u> <u>Mitchell v. Washingtonville Cent. Sch. Dist.</u>, 190 F.3d 1, 7-9 (2d Cir.1999)(affirming summary judgment where the plaintiff stated to the SSA that he was unable to stand or walk, but then claimed in his subsequent ADA action that he was capable of both standing and walking); <u>DiSanto v. McGraw Hill, Inc./Platt's Div</u>., 220 F.3d 61, 65 (2d Cir.2000)(finding that plaintiff's statement to the SSA indicating that he was unable to work prior to his discharge negated any chance that a jury could find that he was capable of performing his duties with reasonable accommodation).

When there is a tension or a conflict between the statements made to the SSA and to the court in which the ADA claim is pending, the plaintiff must offer some explanation for the inconsistency. <u>See</u> <u>Cleveland</u>, 526 U.S. at 805. "To

defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of the job, with or without 'reasonable accommodation.'" Id. at 807.

In this case, there is no direct conflict between Plaintiff's statements in his claim for SSDI and his assertions before this Court. Just as in Cleveland and Parker, Plaintiff has made statements to the SSA indicating that he is unable to work because of his disability, but contends here that he is able to work with reasonable accommodation. See, e.g., Cleveland, 526 U.S. at 804; Parker, 204 F.3d at 331. Although Plaintiff's SSDI forms stated at various points that he had "not been able to work since" his termination, that he was "still disabled," and that he was "totally disabled," (Weiner Aff. Ex. G), the Court notes that these statements "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work." Cleveland, 526 U.S. at 807. On the other hand, the issue of accommodation is central to an ADA claim; indeed, an ADA plaintiff may prevail by showing that he would be incapable of carrying out a job function without reasonable accommodation. See id. at 801 (noting that the ADA was designed "to guarantee [disabled] individuals equal opportunity" to work by requiring that employers make accommodations

where appropriate).  As the Supreme Court has noted, "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely 'I am disabled for purposes of the Social Security Act.'"  Id.  Thus, Plaintiff's statement that he has been unable to work since 2002 is not inconsistent with his assertion that he was capable of performing his duties with reasonable accommodation.

Moreover, contrary to Defendant's contentions, there is no factual contradiction arising from Plaintiff's SSDI statement that he was unable to work "since 2002" and his termination in late 2002.  In contrast to DiSanto, in which the plaintiff claimed that he was unable to work before his discharge, Plaintiff stated that he was unable to work since his discharge in 2002 because of his disability.  This is not merely a contextual difference.  This difference goes to the core of such claims because a plaintiff, as Plaintiff does here, can claim that he was able to work at his previous job with reasonable accommodation, but now faces the daunting task of securing new employment in spite of his disability.  Therefore, reading Plaintiff's applications in context, a reasonable juror could find he was in fact capable of performing the essential functions of his job with a reasonable accommodation despite his statements to SSA.

Furthermore, the Court finds that, even if there were any conflict between Plaintiff's statements, Plaintiff has provided a reasonable explanation.  Just as in

Parker, Plaintiff has explained that his "statements to the SSA constituted an explanation for his termination rather than a description of his actual physical abilities." Parker, 204 F.3d 334. Accordingly, Plaintiff's statements to the SSA do not, as a matter of law, preclude him from showing that he was capable of performing the essential functions of the job, with or without reasonable accommodation.

### 2. Nexus Between Disability and Discharge

Defendant claims that Plaintiff fails the fourth prong because he never requested and was never denied an accommodation. However, Defendant's argument contemplates a scenario in which an employee with a disability informs management that he requires an accommodation and management refuses to provide it. Indeed, in such a scenario, a plaintiff would have to demonstrate that he requested an accommodation. See Mazza v. Bratton, 108 F. Supp. 2d 167, 176 (E.D.N.Y.2000) ("A claim of disability discrimination arising from termination of an employee *based on failure to accommodate* is not made out under the ADA unless the employee's request for a reasonable accommodation has been denied by the employer") (emphasis added).

However, the ADA was not merely designed to protect people with disabilities from employers unwilling to accommodate a disability; it was also designed to prevent discrimination against people with disabilities because of

animus towards disability.  See, e.g., Reeves v. Johnson Controls World Services,

Inc., 140 F.3d 144, 153 (2d Cir.1998) (finding that the ADA protects individuals

from discrimination based on actual disability and perceived disability).  To this

end, a plaintiff asserting a claim under the ADA, in order to make a *prima facie*

case, must simply show that he was fired because of his disability.  See Reeves,

140 F.3d at 149-150; Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir.

1998) (citations omitted).

Plaintiff points to several facts in the record that give rise to an inference

that his termination was the result of discrimination.  First, Plaintiff was replaced

by a person who was not disabled in any way.  See Epstein v. Kalvin-Miller Int'l,

Inc., 21 F. Supp. 2d 400, 404 (S.D.N.Y. 1998) (finding that plaintiff established a

*prima facie* case where employer replaced disabled employee with a non-disabled

person just three weeks after termination).

Second, Rodriguez asked Garcia whether Plaintiff's disability prevented

him from performing his duties just one month before he fired Plaintiff.  The

temporal proximity of these two events alone creates an inference that Plaintiff's

termination was a result of discrimination.  See Ponniah Das v. Our Lady of Mercy

Med. Cntr., No. 00 Civ. 2574, 2002 WL 826877, at *12 (S.D.N.Y. Apr.30, 2002)

(Proximity in time alone will not support a finding-as opposed to an inference of

causation when making out a minimal *prima facie* case-that a plaintiff has proved a

causal connection between protected activity and an adverse employment action).

These facts, taken together, are sufficient to establish a *prima facie* case that Plaintiff was terminated because of his disability.  As a result, Defendant's motion for summary judgment fails on this ground and the burden shifts to Defendant to state a non-discriminatory basis for Plaintiff's termination.

C.      **Defendant Non-Discriminatory Explanation**

Alternatively, Defendant asserts that even if Plaintiff has established a *prima facie* case, Defendant has articulated a valid, non-discriminatory basis for Plaintiff's termination.  Defendant claims that Plaintiff was terminated because of chronic tardiness, a refusal to work certain hours, poor sales, and a need to reduce employee hours.

In doing so, Defendant provides a legitimate, non-retaliatory reason that, if believed, justified the employment action.  However, the record casts enough doubt on Defendant's explanation for Plaintiff dismissal such that a reasonable juror could conclude that Defendant's stated reasons for terminating Plaintiff were merely pretextual.  First, as mentioned above, Rodriguez expressed doubts as to whether Plaintiff could perform his duties because of his disabilities shortly before he decided to terminate Plaintiff.

Second, Defendant's has failed to produce to critical evidence of Plaintiff's alleged incompetence.  Defendant not only failed to present evidence from

Plaintiff's personnel file indicating any complaints about his job performance, it also acknowledged that records that would show his productivity could not be found. Even if such evidence were presented, it was known that other employees would often receive credit for Plaintiff's sales on RadioShack's statistical reports. Defendant knew that Plaintiff's true value as a sales associate was undervalued on those reports, and to point to those same reports to allege poor performance is simply disingenuous.

Third, Defendant's factual allegations about Plaintiff's performance and its staffing needs are contradicted by the record. Such contradictions do not merely cast doubt upon the truthfulness of Defendant's explanation, they form affirmative proof of discrimination by establishing an inference of pretext. As the Supreme Court noted in <u>Reeves</u>:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose [...] Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted).

In this case, Defendant's allegations regarding Plaintiff's qualifications and professionalism are contradicted by Garcia, a neutral employee with knowledge of

15

Plaintiff's job-related conduct.  Specifically, Garcia contradicts Defendant's assertions that Plaintiff was chronically late, unwilling to work certain hours, and guilty of a poor sales record.  In fact, according to Garcia, Plaintiff was an exemplary employee.  Therefore, to the extent that Defendant proffers "Plaintiff's alleged poor performance as the reason for his discharge, Plaintiff provided ample evidence of good performance."  <u>Zimmermann v. Associates First Capital Corp.</u>, 251 F.3d 376, 383 (2d Cir.2001).

Defendant also contends that Plaintiff was terminated because of a need to reduce the staff at the Maiden Lane store.  This, too, is contradicted by the record. Within months of Plaintiff's termination, several non-disabled people were either newly hired or transferred from other stores to work in the Maiden Lane store. This fact is incompatible with Defendant's stated interest in reducing the staff at a store that was underperforming.  Under these circumstances, the inference of discrimination is strong and the evidence casts enough doubt upon Defendant's explanation that a reasonable jury could find that Plaintiff was discriminated against because of his disability.

**CONCLUSION**

For the stated reasons, Defendant's Motion for Summary Judgment is

DENIED.


SO ORDERED.

Dated: March 30, 2007
      Brooklyn, New York

_____
      Senior U.S.D.J.